UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT CONTORNO, | ) | Case No.: 1:10 CV 165 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| MARK SMALL, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant Mark Small's ("Small" or "Defendant") Motion for Partial Summary Judgment (ECF No. 13). For the following reasons, the court hereby grants in part and denies in part Defendant's Motion.

**I. FACTUAL AND PROCEDURAL HISTORY**

On August 22, 2008, Plaintiff Robert Contorno ("Contorno" or "Plaintiff") executed a lease purchase agreement for a building located at 869 Richmond Road in Painesville, Ohio at a rate of $3,500 per month. (Answer & Countercl., Ex. 2, at 1, ECF No. 3-2.) Defendant was the lessor and owned the building. *Id.* at 2; (Compl. ¶ 2, ECF No. 1-1.) Plaintiff alleges that the building was not fit for use. (Compl. ¶ 6.) It lacked sufficient electrical service and a structurally sound roof, which leaked and caused water damage. (*Id.* at ¶¶ 25–27.) Defendant claims that Plaintiff never paid rent as required. (Countercl. ¶ 3, ECF No. 3.)

On September 14, 2009, Defendant obtained a writ of forcible detainer from Painesville Municipal Court, which indicated that after September 21, 2009, any of Plaintiff's property that remained on the premises would be placed on the tree lawn. (Painesville Mun. Ct. Final Notice, ECF No. 14-4.) That day, Plaintiff moved that court to grant him an extension of 30 days, to move his property out of the building and to keep Defendant from converting his property for that time. (Mot. to Prevent Conversion, ECF No.14-8.) That request was denied. *Id.* Plaintiff rented a 2007 International "24 Ft. Liftgate" truck (Truck Rental Receipt, ECF No. 14-12), and between September 14 and 21, 2009, Plaintiff began to move his items. (Compl. ¶¶ 10,11.) On September 21, he asked Defendant's agents for extra time to load his items from the premises and was granted a short extension until later that day. (Lorince Aff. ¶ 7, ECF No. 13-2.) He returned to the premises, and when he finally left his keys with Defendant's agents, he had not removed all of his property as required by the writ. (Compl. ¶¶ 11,12.) He did not request any additional time or indicate that he would come back for his property. (Lorince Aff. ¶ 11.)

Plaintiff left over 150,000 pounds of material in the building. (DeMilta Settlement Report, ECF No. 14-5.) Plaintiff alleges that this property consisted of valuable machinery and items, valued at $1,980,526. (Equipment Removed, at 3, ECF No. 1-1.) Defendant argues that it was scrap metal, evidenced by the observation of Defendant's agent (Lorince Aff. ¶ 16), and the report of DeMilta Iron & Metal ("DeMilta), who Defendant retained to remove Plaintiff's property and who ultimately sold items that it deemed to be of value.

After returning keys to Defendant's agent, Plaintiff moved his truck to a parking lot across the street. (*Id.* at ¶ 12.) Defendant's agents witnessed him loading additional property from the lot onto his truck. (*Id.* at ¶ 13.) Plaintiff maintains that he was waiting for his property that remained

inside of the premises to be moved to the tree lawn. (Pl.'s Aff. ¶ 7, ECF No. 14-2). After the property was not moved out (*Id.* at ¶ 13), Plaintiff wrote to Defendant's counsel in a letter dated September 24, 2009 to inquire about the remaining items. (Contorno Letter to H. Milicic, Ex. A, ECF No. 1-1.) On September 29, 2009, Plaintiff witnessed DeMilita remove his remaining property from the premises. (Contorno Letter to R. Vaughn, Ex. A, ECF No. 1-1.) On October 5, 2009, Plaintiff wrote to DeMilta and requested information to facilitate the return of his property. *Id.*

Plaintiff filed suit in Lake County Court of Common Pleas alleging several counts: (1) misrepresentation, (2) replevin, (3) trespass to chattels, (4) conversion, and (5) abuse of process. (Compl. at 3, 4.) He is only claiming damages for the value of the property left at the site. (Pl.'s Initial Disclosures, at 3, ECF No. 13-3.) Defendant removed the case to this court based on diversity jurisdiction. (ECF No. 1.) Defendant's Answer included a counterclaim for breach of contract regarding the unpaid rent. (ECF No. 3.) Defendant now seeks summary judgment on all of Plaintiff's claims. (ECF No. 13.) Plaintiff filed a response in opposition to Defendant's Motion for Summary Judgment on the conversion and abuse of process claims. (ECF No. 14.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including

>> depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

Defendant argues that there is no genuine issue of material fact regarding any of Plaintiff's claims. As indicated above, Plaintiff filed a brief in opposition only in regard to the conversion and abuse of process claims. (Pl.'s Mot. in Opp'n, at 8, ECF No. 14 (requesting that "Defendant's Motion for Summary Judgment be denied as to Plaintiff's claims for [c]onversion[] and [a]buse of [p]rocess").) Plaintiff did not file a brief in opposition to Defendant's Motion in regard to the misrepresentation, replevin, or trespass to chattels claims. *See generally id.* Even where a summary judgment motion is uncontested, a court is not permitted to merely enter judgment in the moving party's favor. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) (finding that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.") Instead, the court may grant summary judgment only if, after a close examination of the motion and the documents in support, the court determines that no genuine issue of material fact remains. *Id.*; *Turner v. FMC*, 23 F. App'x 415, 417 (6th Cir. 2001).

### A. Misrepresentation

Defendant first argues that Plaintiff cannot maintain his action for misrepresentation because he has not declared any related damages. Plaintiff did not specify whether he was alleging fraudulent or negligent misrepresentation. The Ohio Supreme Court defined negligent misrepresentation as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, *is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information*.

*Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (emphasis added) (citations omitted). Fraudulent misrepresentation requires a showing that:

> (a) a representation, or where there is a duty to disclose, concealment of fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Board of Cnty. Comm'rs of Stark Cnty.*, 491 N.E.2d 1101, 1105 (Ohio 1986)(citations omitted).

Both causes of action have a similar requirement that the reliance must be the proximate cause of the injury. Thus, a plaintiff alleging either type of misrepresentation must show damages specifically caused by plaintiff's reliance.

Plaintiff alleges that before he signed the lease, Defendant represented that the building had sufficient power and a sound roof. Plaintiff also avers that the building actually lacked both, and that the leaky roof caused water damage. However, when required to provide each category of

damages in the Initial Disclosures, Plaintiff only articulated damages for replacement of equipment and parts. Defendant correctly points out that Plaintiff is required to demonstrate damages caused by reliance on the misrepresentation. Plaintiff did not respond by showing any such damages. Summary judgment is, therefore, granted in favor of Defendant for the misrepresentation claim.

### B. Replevin

Next, Defendant contends that Plaintiff cannot prevail on a claim for replevin because Defendant no longer possesses the property in question. Replevin is a civil action to obtain property, and Ohio Revised Code states that a final judgment "shall award permanent possession of the property and any damages to the party." Ohio Rev. Code Ann. § 2737.14 (West 2011). However, when the defendant cannot deliver the property, "the action may proceed as a claim for conversion." *Globe Auto Ctr. v. A-Tech Automotive Repair*, No. 2009-P-0026, 2009 WL 2005354, at *1 (Ohio Ct. App. July 10, 2009). Defendant argues that DeMilta has already taken the materials from the leased building, a fact confirmed both by Plaintiff's allegations and DeMilta's settlement report. Since Defendant cannot deliver the property, the proper claim is for conversion. Accordingly, the court grants summary judgment in favor of Defendant for the replevin claim.

### C. Trespass to Chattels and Conversion

Defendant argues both that temporary displacement of property cannot sustain a claim for trespass to chattels and that Plaintiff's failure to allege damages relating to the trespass makes his claim untenable. Trespass to chattels has been called the "little brother of conversion." *State v. Herbert*, 358 N.E.2d 1090, 1106 (Ohio 1976). While the tort exists, "the authority for it in Ohio has been described as 'extremely meager.'" *Dryden v. Cincinnati Bell Tel.*, 734 N.E.2d 409, 416 (Ohio Ct. App. 1999). The Northern District of Ohio has previously relied on the Restatements when

analyzing this tort, "noting [the] dearth of Ohio case law on trespass to chattel." *MCI WorldCom Network Servs., Inc. V. W.M. Brode Co.*, 411 F.Supp.2d 804, 810 (2006). The court defines such action as "intentionally using or intermeddling with the chattel in possession of another." *Id.* (quoting Restatement (Second) of Torts § 217(b)).

Moreover, Defendant argues that Plaintiff: (1) cannot establish the elements of conversion; and (2) abandoned his property, providing Defendant with a complete defense to Plaintiff's conversion claim. If true, either scenario would result in summary judgment for Defendant.

Ohio courts borrow from the Restatement (Second) of Torts to define conversion as well. *See Hinkle v. Cornwell Quality Tool Co.*, 532 N.E.2d 772, 776 (Ohio. Ct. App. 1987) (stating that "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value fo the chattel")(citing Restatement (Second) of Torts § 225A.)

Kentucky law and Ohio law define trespass to chattels and conversion similarly. *Compare Madison Capital Co. v. S & S Salvage, L.L.C.*, 2011 WL 2378646,at *4 (W.D. Ky. June 15, 2011) (The court defines trespass to chattels as "using or intermeddling with a chattel in the possession of another" and conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.") with *MCI WorldCom Network Servs.*, 411 F.Supp.2d at 810 (quoted *supra*) and *Hinkle v. Cornwell Quality Tool Co.*, 532 N.E.2d 772, 776 (Ohio. Ct. App. 1987) (quoted *supra*). The court in *Madison Capital* noted:

> that when a plaintiff alleges a claim for conversion, the alleged
> conduct will almost certainly have constituted a trespass.

> Commentators discussing the torts of trespass and conversion have found that they are closely related to one another with the difference being the severity of the damage resulting from the tortious conduct. . . . "If return of the chattel is not possible. . .then an action for conversion should be brought."

*Madison Capital Co.*, 2001 WL 2378646, at *4 (internal citations omitted). This court agrees with the *Madison Capital* Court's analysis.

As to the trespass to chattels claim, there is no requirement that the interference be temporary in nature, as Defendant suggests. However, Defendant's possession and subsequent sale of Plaintiff's property to DeMilta completely deprives Plaintiff of use of his property, and Plaintiff seeks damages for the full value of his parts. Plaintiff's true claim is for conversion, not trespass. Therefore, the court grants summary judgment on the trespass to chattels claim in favor of Defendant.

### 1. Prima Facie Case for Conversion

Defendant argues that Plaintiff cannot establish the elements of a conversion claim. To succeed in an action for conversion under Ohio law, Plaintiff must demonstrate: (1) Defendant's exercise of dominion or control over (2) Plaintiff's property, (3) wrongfully or in a manner inconsistent with Plaintiff's rights of ownership. *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.*, 493 N.E.2d 289, 292 (Ohio Ct. App. 1985).[1] Ohio courts have also found that "abandonment is a

---

[1] The court notes that the elements of conversion alter slightly when a defendant has gained possession of a plaintiff's property lawfully. If a defendant came into possession of the property lawfully, element three is no longer a factor, and a plaintiff must also show that he demanded the return of the property after Defendant exercised control or dominion and that Defendant refused to deliver the property. *Ohio Tel. Equip. & Sales, Inc.*, 493 N.E.2d at 292. Because the parties did not brief this issue, the court will not discuss it.

-9-

complete defense to conversion." *Bourland v. Town & Country Imports*, No. 975, 1982 WL 5855, at *3 (Ohio Ct. App.. March 31, 1982).

Defendant does not challenge the first or second element of the conversion claim; therefore, the court concludes that Defendant exercised control over Plaintiff's property.

The parties' main dispute is over whether Defendant exercised control over Plaintiff's property wrongfully or in a manner inconsistent with Plaintiff's ownership rights. Defendant's primary argument is that Plaintiff cannot establish that Defendant's actions were wrongful or inconsistent with Plaintiff's ownership rights, because Defendant's actions were authorized by the Painesville Municipal Court. Plaintiff essentially argues that Defendant's sale of the property was wrongful because the order required Defendant to place all of Plaintiff's remaining property on the tree lawn and instead of doing so, Defendant sold Plaintiff's property.

The parties do not dispute that Defendant obtained a legal judgment permitting him to evict Plaintiff. The parties do not dispute that Plaintiff's eviction date was September 21, 2009. A court order also clearly states that after September 21, 2009, at 9:15 a.m. Defendant was to have placed any property remaining on the premises on the tree lawn. (Painesville Mun. Ct., Final Notice, ECF No. 14-4, at 39.) Moreover, Painesville Municipal Court Rules state that "in cases in which the Court has issued a writ of restitution in actions in forcible entry and detainer, it shall be the responsibility of the plaintiff [here Defendant] or his agents to provide for the actual moving out of the defendant [here Plaintiff] from the residence premises, including the post move-out storage of any personal property of the" party. Painesville Mun. Ct. R. 9(B). This rule establishes that Defendant was lawfully able to move the property to another location and to store the property. Defendant presents

no evidence that the court or rule authorized him to sell any property left at the premises. In selling the property, Defendant may have exceeded the scope of his legal authority to exercise control over Plaintiff's property.

The issue is whether Defendant properly disposed of Plaintiff's property pursuant to a court order or converted it for his own use. This issue is inextricably linked to the issue of whether Plaintiff abandoned the property that remained in the premises.

### 2. Abandonment

Next, Defendant argues that he has shown that Plaintiff abandoned his property, a complete defense to conversion. Abandonment consists of two elements: (1) intent to abandon; and (2) acts or omissions implementing such intent. *Davis v. Suggs*, 460 N.E.2d 665, 668 (Ohio 1983). Intention is to be determined based on the attending facts and circumstances. *Hodges v. Ettinger*, 189 N.E. 113, 114 (Ohio 1934). The legal standard requires evidence of intent to be "direct, affirmative, or reasonably beget the exclusive inference of throwing away." *In re Panel Town of Dayton, Inc.*, 338 B.R. 764, 774 (Bkrtcy.S.D.Ohio 2006).

Defendant argues that Plaintiff's actions clearly indicated the intent to abandon. Defendant asserts that because Plaintiff knew he had until September 21, 2009 to remove his property, and because Plaintiff did not remove all of his property prior to the final occupancy date, Plaintiff abandoned any remaining property. Defendant argues that by Plaintiff asking the local court to grant him an extension to "prevent conversion of [his] property," Plaintiff demonstrated that he understood the consequences of his failure to remove his property. (Contorno Painesville Mot., ECF No. 14-8.) He handed his keys to Defendant's agents without requesting additional time or informing them that

he planned to pick up his things from the tree lawn. Furthermore, he failed to inquire as to where or when his 150,000 pounds of material would be moved at that time, since Defendant's two agents would probably not have been able to do so immediately. Defendant argues that these circumstances strongly support the "inference of throwing away" necessary for abandonment.

Plaintiff argues that he did not abandon the property. He affirmatively states this in his affidavit, which serves as evidence in the record to dispute Defendant's claim that Plaintiff abandoned Plaintiff's remaining property. Also, Plaintiff explains that he relied on the Notice's statement that his belongings would be left on the tree lawn and that he waited across the street for his property. He argues that this ought to disprove intent to abandon.

Additionally, Plaintiff points to his September 24, 2009 letter to Defendant's counsel, Heidi Milicic, inquiring about how to retrieve his property and his October 5, 2009 letter to DeMilta requesting the return of his property as evidence that he did not abandon his remaining property. Plaintiff argues that these letters show that he intended to keep, not abandon, his property. He also explains that the eviction order did not extinguish his rights to his property, it only prohibited Plaintiff's right to keep his property on the premises.

The record shows that there is a genuine issue of material fact regarding whether Plaintiff intended to abandon the property. A fact is material if its resolution will affect the case's outcome. This case turns on whether Plaintiff abandoned the property because if Plaintiff abandoned his property, then he cannot establish a conversion claim. Therefore, the issue of whether plaintiff abandoned the his remaining property is a genuinely disputed material fact. As such, summary judgment is denied on the conversion claim.

**D. Abuse of Process**

Abuse of process is a tort that has developed for "cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 626 N.E.2d 115, 118 (Ohio 1994) (citing Prosser & Keeton, *The Law of Torts* 897, § 121 (5th ed. 1984)). The tort of abuse of process has three elements:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."

*Id.*

Defendant essentially argues that Plaintiff cannot succeed in an abuse of process claim because the initial eviction proceeding, which this claim is based on, was successful and authorized Defendant's action. Defendant further argues that this claim is merely a restatement of the conversion claim.

An abuse of process claim is not defeated simply because the initial lawsuit was successful. The first element of the claim explicitly states that the legal proceeding must have "proper form" and "probable cause." Neither party disputes that the eviction proceeding was undertaken in proper form and that Defendant had probable cause to initiate it—Plaintiff's nonpayment of rent. Therefore, Plaintiff has satisfied this element.

As for the second element, "there is no liability for abuse of process where [a party] has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Yaklevich*, 626 N.E.2d at 118 (internal citation omitted). To satisfy this element, "[t]he

tortious character of the defendant's conduct consists of his attempt to employ a legitimate process in an improper manner, and this point must be clearly shown by the plaintiff to entitle him to maintain his action." *Kurisnsky v. Nat'l Cable Television Ass'n*, 649 N.E.2d 860, 867 (Ohio Ct. App. 1994) (internal citations omitted) (emphasis omitted).

Defendant argues that the eviction proceeding was used to regain possession of his property and collect on unpaid rents, which is an eviction proceeding's designed use. Plaintiff argues that Defendant used the valid eviction proceeding to commandeer his property, which Plaintiff's expert valued at almost $2 million. (Pl.'s Aff. at 1, ECF No. 14-2.) A reasonable juror could not find by a preponderance of the evidence that Defendant used the eviction proceeding to obtain Defendant's property. Logically, Defendant could not have known that Plaintiff would leave any property remaining on the premises post-move out. Defendant was not aware that Plaintiff had left any property remaining on the premises until September 21, 2009, a week after the conclusion of the eviction proceeding. Therefore, it is not possible for Defendant to have used that legal process to obtain Plaintiff's property. Plaintiff's proper claim is for conversion.

In addition, when a party avers that a fact is genuinely disputed, that party must support the assertion by citing to particular parts of the record or evidentiary materials. Plaintiff does not bring any evidence to the court's attention that creates a genuine dispute of material fact as related to the abuse of process claim. Because there are no genuine issues of material fact regarding the abuse of process claim and because a reasonable jury could not find by a preponderance of the evidence that the eviction proceeding was perverted to accomplish an ulterior purpose for which it wasn't designed, Plaintiff is unable to establish an abuse of process claim. Therefore, the court grants summary judgment for Defendant for the abuse of process claim.

## IV. CONCLUSION

Defendant has failed to show that no issue of material fact remains on Plaintiff's conversion claim; thus, summary judgment is not appropriate regarding this claim. There are no issues of material fact regarding the misrepresentation, replevin, and abuse of process claims, and the trespass to chattels claim is improper; therefore, the court grants summary judgment in favor of Defendant on these claims.

The court hereby grants in part, and denies in part Defendant's Motion for Summary Judgment. (ECF No. 13.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

September 27, 2011